IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE N. PHILLIPS,<br><br>*Plaintiff,*<br><br>v.<br><br>STALLION OILFIELD SERVICES, LTD.,<br><br>*Defendant.* | Civil Action No. 2:21-cv-1089<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Wayne N. Phillips ("Phillips") initiated this lawsuit against Defendant Stallion Oilfield Services, Ltd. ("Stallion") after being terminated as a commercial truck driver. (ECF No. 1). Phillips claims that Stallion discriminated against him based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29. U.S.C. § 621, *et seq.* (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951, *et seq.* (Count III). Phillips also alleges that Stallion failed to provide reasonable accommodations for his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (Count II). Presently before the Court is Stallion's Motion for Summary Judgment. (ECF No. 21). For the reasons set forth below, Stallion's Motion for Summary Judgment (ECF No. 21) will be granted.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Stallion is an energy service company that provides sewage and fluid logistics services to companies in the oil and gas industry. (ECF No. 24, ¶ 1). Stallion operates locations throughout the United States, including a location in Washington, Pennsylvania, which was created when Stallion acquired Al's Water Service in 2018. (*Id.* ¶¶ 3-5). In July 2018, Phillips was hired by

1

Stallion and began work at Stallion's location in Washington, Pennsylvania as a commercial truck driver. (*Id.* ¶ 8); (ECF No. 1, ¶ 14). Initially, Phillips was supervised by Jeff Pinkerton and Robert Schroeder ("Schroeder"). (ECF No. 24, ¶¶ 10, 14). In 2019, Michael Neil ("Neil") was hired by Stallion as an operations manager and became Phillips's supervisor for the remainder of Phillips's employment with Stallion. (*Id.* ¶¶ 15-16).

At the time Phillips was hired by Stallion, he was 72 years old. (*Id.* ¶¶ 7, 9). Phillips had been diagnosed with type II diabetes in 2006, and, as a result of his diabetes, Phillips also developed cellulitis in his foot. (*Id.* ¶¶ 20, 21). "On November 12, 2019, Phillips requested retroactive FMLA leave due to 'complications with diabetes[,]'" which Stallion granted. (*Id.* ¶ 23); (*see also* ECF No. 23, p. 96). Phillips's leave retroactively began on November 6, 2019 (the first day Phillips had missed work) and was scheduled to expire on January 29, 2020. (*Id.* ¶¶ 24, 25); (ECF No. 23, p. 96). However, Phillips returned to work on December 9, 2019, after being released by his doctor, James Marks ("Dr. Marks"), to return to work "with no needed accommodations or alterations to his job duties." (ECF No. 24, ¶¶ 25-27); (*see* ECF No. 23, p. 104).

On February 25, 2020, Phillips took another FMLA leave for "complications due to diabetes," which was scheduled to expire on April 21, 2020. (ECF No. 24, ¶¶ 28-29); (ECF No. 23, p. 109). Eight days before his leave was set to expire, Phillips's "family doctor, Zoe D. Hawkins, submitted a note excusing [him] from work until May 31, 2020." (ECF No. 24, ¶ 30); (*see* ECF No. 23, p. 114). On May 19, 2020, Phillips was released by Dr. Marks to return to work with no restrictions on May 31, 2020. (ECF No. 24, ¶ 31); (ECF No. 23, pp. 116-117). In his deposition, Phillips testified "that he was ready to return to work at the time of his release and did

not need any accommodations to perform his duties." (ECF No. 24, ¶ 32); (*see* ECF No. 23, pp. 46-47, 52, 53).

As Phillips's return date approached, Stallion's Compensation and Benefits Manager, Lydia Olsen ("Olsen") emailed Phillips's supervisor, Neil, about Phillips's return to work date and Neil responded that "with the market slow down [Phillips] is really not needed at this time." (ECF No. 23, p. 111). Olsen instructed Neil to prepare Phillips's termination documentation, and, on May 31, 2020, Stallion terminated Phillips's employment. (*Id.*); (ECF No. 24, ¶ 36). Stallion stated that Phillips was fired "due to a lack of work[,]" resulting from a downturn in the industry. (ECF No. 25-2, p. 3). Stallion claims that it anticipated declines in revenue for June, July, and August of 2020 because of an industry-wide downturn, internal financial forecasts sent to upper management, and one of Stallion's large jobs in New Castle, Pennsylvania ending in May 2020. *See* (ECF No. 24, ¶¶ 47, 53-56); (ECF No. 23, p. 131). Indeed, according to financial records kept by Stallion's Regional Finance Manager, Timothy Cribbs ("Cribbs"), its monthly revenue[1] dropped from $324,661 in May 2020 to revenues of $258,454, $191,476, and $238,065 in June, July, and August respectively. (ECF No. 23, p. 134). Stallion also claims that the same downturn led to it laying off over 500 employees in 2020. (ECF No. 25-2, p. 3).

In the months following Phillips's termination, Stallion hired three new drivers. (ECF No. 23, p. 123). On September 28, 2020, Stallion hired 54-year-old Charley Berry ("Berry"); on October 12, 2020, Stallion hired 34-year-old Dustin Vaughan ("Vaughan"); and on November 11, 2020, Stallion hired 74-year-old James Ringer ("Ringer"). (*Id.*); (ECF No. 25-1, p. 3); (ECF No.

---

[1] The Court recognizes that, because Stallion's accounts receivable turnaround is about 50 to 60 days, the revenue numbers for any given month may contain data from other months. *See* (ECF No. 25-1, p. 2); (ECF No. 25-2, pp. 58-60).

25-2, p. 52). Stallion had monthly revenues of $245,496 in October 2020; $244,988 in November 2020; and $258,429 in December 2020. (ECF No. 23, p. 134).

## II.   LEGAL STANDARD

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; s*ee also Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994) (stating that the nonmoving party must "point[] to sufficient cognizable evidence to create material issues of fact concerning every element as to which [he/she] will bear the burden of proof at trial"). "[A] complete failure of proof concerning an essential element" of the non-movant's claim "necessarily renders all other facts immaterial." *Id*. at 323. Thus, "[i]n such a situation, there can be 'no genuine [dispute] as to any material fact'" sufficient to survive the motion and judgment as a matter of law becomes

appropriate. *Id.* at 322-23; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) ("[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.").[2]

### III. ANALYSIS

#### A. Phillips's Age Discrimination Claims

(1) <u>Phillips Has Established That He Was Replaced By a Sufficiently Younger Candidate.</u>

At Count I and Count III, Phillips brings claims for age discrimination under the ADEA and PHRA, alleging that Stallion terminated his employment "in favor of younger employees[.]"

---

[2] Phillips cites *Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005) to support his position that, for purposes of deciding Stallion's Motion for Summary Judgment, the Court should not consider the testimony of three Stallion employees, Christa Dansby ("Dansby"), Cribbs, and Schroeder. (*See* ECF No. 25, p. 3).

In *Hill*, the United States Court of Appeals for the Third Circuit stated that, when deciding a motion for summary judgment, a court should not consider "evidence the jury is not required to believe, including testimony of interested witnesses." *Hill*, 411 F.3d at 129 n.16. In a later opinion, however, the Third Circuit clarified that "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007) (footnote omitted); *see also McNelis v. Pennsylvania Power & Light, Susquehanna, LLC*, No. 4:13-CV-02612, 2016 WL 5019199, at *15 n.7 (M.D. Pa. Mar. 23, 2016), aff'd sub nom, 867 F.3d 411 (3d Cir. 2017) (rejecting plaintiff's argument that testimony of interested parties must be disregarded); *Wilkie v. Geisinger Sys. Servs.*, No. 3:12-CV-580, 2014 WL 4672489, at *5 (M.D. Pa. Sept. 18, 2014) (same); *Edgerton v. Wilkes-Barre Home Care Servs., LLC*, No. 3:12-CV-0191, 2014 WL 131605, at *2 (M.D. Pa. Jan. 13, 2014), aff'd, 600 F. App'x 856 (3d Cir. 2015) (stating that plaintiff's "repeated bald assertions that a jury is not required to believe testimony favorable to [the defendants] do not put facts in genuine dispute and will not defeat [defendant's] summary judgment motion.").

Thus, the Court will consider the testimony of Cribbs, Dansby, and Schroeder—each of whom, as Stallion employees, are "interested witnesses"—if it is uncontradicted and plausible. However, because the Court still "must disregard all evidence favorable to the moving party that the jury is not required to believe[,]" it will disregard the testimony of Cribbs, Dansby, and Schroeder when Phillips has contradicted that testimony. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000).

(ECF No. 1, ¶ 34). To establish his ADEA and PHRA[3] age discrimination claims, Phillips must show that he (1) was over the age of 40 at the time of the alleged discrimination, (2) was qualified for the position as a commercial truck driver, "(3) suffered an adverse employment action, and (4) was ultimately replaced, or the position was filled by, a younger person." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 973–74 (3d Cir. 1998). Stallion argues that Phillips's age discrimination claims should be dismissed because Phillips has failed to establish the fourth element—that he was "replaced, or the position was filled by, a younger person." *Id.*

It is undisputed that, following Phillips's firing on May 31, 2020, Stallion hired three new drivers for the Washington, Pennsylvania location. (ECF No. 23, p. 123); (ECF No. 25-2, p. 52). Stallion hired 54-year-old, Berry on September 28, 2020; 34-year-old Vaughan on October 12, 2020; and 74-year-old Ringer on November 11, 2020. (ECF No. 23, p. 123); (ECF No. 25-2, p. 52). "While there is no bright-line rule in determining 'sufficient' age difference between a discharged employee and his replacement," the age differences between Phillips and Berry and between Phillips and Vaughan—differences of over twenty years and over forty years, respectively—are each sufficient to satisfy the fourth element. *Shontz v. Rite Aid of Pennsylvania Inc.*, 619 F. Supp. 2d 197, 206 (W.D. Pa. 2008); *see also Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 765 (3d Cir. 1989) (holding that a ten-year age difference was sufficient to support an inference of age discrimination when the person hired was not part of the protected class); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 (3d Cir. 1988) (holding that a nine-year age difference was enough to establish that the employee had been replaced by someone sufficiently younger). Phillips still must show, however, that he was replaced by either Berry or Vaughan.

---

[3] "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n. 2 (2004)).

Stallion argues that because it did not fill Phillips's vacancy for nearly four months, Phillips cannot prove that he was replaced at all. (ECF No. 22, p. 12). While each occupation and each set of circumstances warrants a different analysis, the United States District Court for the Eastern District of Pennsylvania has, on multiple occasions, held that a year or more between an employee being fired and another employee being hired "renders the events too attenuated" to support the reasonable inference that the newly hired employee "replaced" the former employee. *George v. Wilbur Chocolate Co.*, No. 08-CV-3893, 2010 WL 1754477, at *4 n.13 (E.D. Pa. Apr. 29, 2010), aff'd, 425 F. App'x 170 (3d Cir. 2011) (holding that "the year separating [p]laintiff's termination and the start of [the new employee's] tenure in the lab renders the events too attenuated to reasonably support the argument that [the new employee] replaced [plaintiff]."); *see also Gutknecht v. SmithKline Beecham Clinical Lab'ys, Inc.*, 950 F. Supp. 667, 673 (E.D. Pa. 1996), aff'd, 135 F.3d 764 (3d Cir. 1997) (holding that a gap of one year and three months between firing one employee and hiring another "would not permit a reasonable jury to infer any suspicion of pretext or that [the new employee] was hired" as a replacement); *Dibiase v. SmithKline Beecham Corp.*, 847 F. Supp. 341, 345 (E.D. Pa. 1994), rev'd on other grounds, 48 F.3d 719 (3d Cir. 1995) ("[B]ecause of the [fourteen month] delay between [p]laintiff's termination and [a former employee's] return as a shift supervisor, there is an absence of evidence that [p]laintiff was replaced.").

Here, the gap between Phillips's firing and Stallion's hiring of a new commercial truck driver—less than four months—is far shorter than the gap in any of the above cases. Additionally, as Phillips points out, the new drivers hired after Phillips's termination were hired by Phillips's former supervisor; were hired to perform the same job Phillips had performed; and were hired to perform that job at the same Washington, Pennsylvania location where Phillips had worked. (ECF

No. 25-2, p. 52). When weighed against this evidence, the relatively short four-month gap between Phillips's firing and Stallion's hiring of a new commercial truck driver is not enough to preclude a reasonable jury from finding that Phillips was replaced.

Next, Stallion argues that even if Phillips established that he was "replaced," he "has not shown that [Berry or Vaughan] were any more his 'replacement' than [] Ringer, which dooms [Phillips's] age discrimination claim." (ECF No. 22, p. 12). As Phillips points out, however, it would make little sense to consider Ringer as Phillips's replacement because Ringer was the third driver hired after Phillips's termination and was hired almost a month after Vaughan and almost a month and a half after Berry. (ECF No. 25, p. 5). Temporally, it makes more sense to consider Berry—the first driver hired after Phillips's termination—as his replacement. Given this, a reasonable jury could find that Phillips was replaced by a younger person. Thus, Phillips has sufficiently established a *prima facie* case for age discrimination under the ADEA and PHRA.

(2) <u>Phillips Has Not Shown That Stallion's Nondiscriminatory Reason for Firing Phillips Is Pretext.</u>

Having met the initial burden of proving a *prima facie* case for age discrimination, the burden shifts to Stallion "to present a non-discriminatory reason for the adverse decision." *Thimons v. PNC Bank, N.A.*, 254 F. App'x 896, 897–98 (3d Cir. 2007). According to Stallion, Phillips was "laid off due to lack of work[,]" caused by a "downturn in the industry[.]" (ECF No. 25-2, p. 3). This was expressed in an email exchange between Olsen and Neil on May 28, 2020, just three days before Phillips was fired. (ECF No. 23, p. 111). In addition to this email, Stallion points to financial reports showing that Stallion's revenue and net income decreased from June 2020 through August 2020, which Stallion claims to have anticipated prior to Phillips's request to return to work. (*Id.* at 131, 133). According to Stallion, these decreases were anticipated because of internal financial forecasts sent to Stallion's upper management and because one of Stallion's

jobs in New Castle, Pennsylvania ended in May 2020. (*Id.* at 131); (ECF No. 24, ¶¶ 47, 53-56). Stallion claims that the downturn in the industry led to Stallion laying off over half of its workforce in 2020. (ECF No. 25-2, p. 3). This evidence—especially given the general economic uncertainties present in the summer of 2020[4]—is sufficient to satisfy Stallion's "relatively light burden" for presenting a non-discriminatory reason for firing Phillips. *Fuentes*, 32 F.3d at 763.

Because Stallion presented a legitimate, non-discriminatory reason for firing Phillips, the burden shifts back to Phillips, who must "present evidence contradicting the core facts put forward by [Stallion] as the legitimate reason for its decision." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). To survive summary judgment, Phillips "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Stallion's] proffered legitimate reason[] for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (quoting *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993)) (internal citations omitted). Put another way, Phillips "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

---

[4] *See generally* Dave Altig et al., *Economic Uncertainty Before and During the Covid-19 Pandemic*, 191 J. PUB. ECON. (2020) (noting that "all indicators show huge uncertainty jumps in reaction to the pandemic and its economic fallout."); *Cnty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 891-894 (W.D. Pa. 2020) (chronicling the various Covid-19-related orders issued in Pennsylvania from March 2020 through August 2020, including stay-at-home-orders, business closures, and occupancy restrictions).

Phillips points to several pieces of evidence in an attempt to contradict Stallion's claim that Phillips was fired because of a lack of available work caused by a market slowdown. First, Phillips points to deposition testimony of former Stallion drivers, Darryl Briggs ("Briggs") and Jordan Stein ("Stein"), who "both testified that Stallion's proffered reason of 'lack of work' for [Phillips's] termination was a farce." (ECF No. 25, p. 6). Briggs testified that Stallion was not undergoing a slowdown at the time of Phillips's firing. (ECF No. 25-2, p. 90). According to Briggs, he knew that there was not a slowdown at the Washington location "because of all the hours" everybody was working. (*Id.* at 102). In fact, Briggs testified that he left Stallion because of the high number of hours that drivers were required to work. (*Id.* at 91). Stein also testified that he worked long hours and that there was no indication of a slowdown or a shortage of work at Stallion. (*Id.* at 111, 113-14). Phillips also notes that, according to Neil, June and July were typically Stallion's busiest months. (*Id.* at 16, 22); (ECF No. 25, pp. 9-10).

Next, Phillips argues that the financial information provided by Cribbs "does not support Stallion's assertion of a forecasted work downturn[.]" (ECF No. 25, p. 9). Phillips claims that the financial reports presented by Cribbs could not have been used for forecasting future months because "the data for May 2020 would not have been available until mid-June," and because the reports are made up of historical data rather than forecasts. (*Id.*). Phillips also challenges the accuracy of the monthly financial reports, arguing that because Stallion's receivable turnaround is 50 to 60 days, the information for a given month could reflect activity up to two months in the future. (*Id.*); (ECF No. 25-2, p. 57).

This evidence is not sufficient for a reasonable jury to disbelieve Stallion's stated reason for firing Phillips. First, Briggs and Stein, two former truck drivers for Stallion, were not privy to Stallion's financial records. (ECF No. 23, pp. 88-89, 137-138). As Stallion points out, even if

10

their own workloads were high, this does nothing to contradict the possibility that there was insufficient work for other drivers due to expected financial difficulties. As to Stallion's financial records, Stallion argues that Phillips misunderstands and conflates the distinction between the "forward looking financial forecasts and backward looking financial documents that Stallion produced." (ECF No. 26, p. 9). Regardless, Phillips does not dispute that Stallion sent "financial forecasts to upper management to share predicted revenue for the upcoming months." (ECF No. 24, ¶ 47). Nor does Phillips dispute Stallion's forecasts for July and August 2020. (*Id.* ¶¶ 53-56). When weighed against these undisputed facts and the evidence put forward by Stallion, the evidence presented by Phillips—testimony from two former Stallion drivers that they personally had high workloads and testimony challenging Stallion's ability to use its financial records for accurate forecasting—is not enough to contradict Stallion's assertion that it fired Phillips because it expected a downturn at its Washington, Pennsylvania location. Their testimony requires a speculative leap to relate their own experience with that of Stallion as a whole, or Phillips in particular.

This evidence is also not sufficient to support a reasonable inference that a discriminatory reason was more likely than not a motivating factor for Stallion's firing of Phillips. To support the notion that Stallion harbored age-based animus towards him, Phillips cites to testimony of Briggs saying that other drivers sometimes referred to Phillips as "old man[,]" which was intended in a "friendly way." (ECF No. 25-2, pp. 98-99). Regardless of the intention, comments made by Phillips's fellow drivers—who did not have the authority to make employment decisions—have no bearing on the reason Stallion fired him. As it relates to his supervisor, Neil, Phillips points to one "backhanded comment" in which Neil complimented Phillips's work ethic despite him being older than other employees. (*Id.* at 100-01). Nevertheless, Phillips does not dispute that Neil hired

other drivers who were a similar age as Phillips; that Neil "generally had a positive regard for older employees[;]" or that "the only instances in which [Phillips's] age was discussed or mentioned was in regards to positive performance." (ECF No. 24, ¶¶ 65-67). Phillips has not produced any evidence to show that his age was a motivating factor for his termination by Stallion. Given this, and because Phillips cannot contradict Stallion's nondiscriminatory reason for firing him, Stallion's motion for summary judgment as it relates to Phillips's discrimination claims (Count I and Count III) will be granted.

### B. Phillips's Failure to Accommodate Claim

To establish a claim for failure to accommodate under the ADA, Phillips must show that "he is disabled, his employer was aware of it, he requested accommodation, a reasonable accommodation was possible, and the employer did not make a good faith effort to respond." *Belles v. Wilkes-Barre Area Sch. Dist.*, 843 F. App'x 437, 438 (3d Cir. 2021) (citing *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017)). Stallion argues that Phillips's claim for failure to accommodate brought under the ADA should be dismissed because Phillips was not disabled; Phillips never requested an accommodation; and Stallion never denied him an accommodation. (ECF No. 22, p. 16).

Phillips claims that his diabetes and cellulitis "rendered him an individual with a disability under the ADA[]" and that Stallion fired him for requiring and requesting accommodations related to that disability. (ECF No. 1, ¶¶ 39, 43). Even if these conditions rendered Phillips "disabled" for a period of time, he does not dispute "that he was ready to return to work at the time of his release[.]" (ECF No. 24, ¶ 32). This is further supported by the fact that, on May 19, 2020, Phillips was released by Dr. Marks to return to work "with no restrictions." (ECF No. 23, pp. 116-17). Given this, it is not clear what Phillips's purported disability was at the time of his firing. It is also

12

unclear what accommodations Phillips claims to have requested and been refused by Stallion. Phillips does not dispute that, at the time of his release, he "did not need any accommodations to perform his duties." (ECF No. 24, ¶ 32). Phillips also does not dispute that he "testified multiple times that he never requested an accommodation and did not need one." (*Id.* ¶ 69). The complaint only alleges that Stallion knew of Phillips's "need for reasonable accommodation (limited/additional time off from work)." (ECF No. 1, ¶ 40). This indicates that Phillips may consider his two requests for FMLA leave as requests for accommodation. These requests, however, cannot be the basis for Phillips's failure to accommodate claim because both requests were granted by Stallion. (ECF No. 24, ¶ 70).

By showing that there is no evidence to support Phillips's failure to accommodate claim, Stallion has "discharge[d] its initial burden of showing that there is no genuine issue of material fact" relating to that claim. *Player v. Motiva Enterprises, LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007). For his failure to accommodate claim to survive summary judgment, Phillips "must, in [his] opposition to the motion, identify evidence of record that creates a genuine issue of material fact[]" relating to the failure to accommodate elements in question. *Id.* Phillips has failed to identify any such evidence. In fact, Phillips's brief in opposition to Stallion's motion for summary judgment does not address the failure to accommodate claim at all. Given this, Stallion's motion for summary judgment as it relates to Phillips's ADA failure to accommodate claim (Count II) will be granted.

### IV. CONCLUSION

For the reasons set forth above, Stallion's Motion for Summary Judgment (ECF No. 21) will be granted.  Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_5-23-23_
Dated